NEW JERSEY TURNPIKE AUTHORITY, PLAINTIFF-RESPONDENT, v. MITCHELL TOOTLE AND MARY TOOTLE, HIS WIFE (FIRST NAME UNKNOWN), *ET ALS.*, DEFENDANTS-APPELLANTS.

Argued September 13 & 14, 1971—Decided October 12, 1971.

310

*Mr. Calvin J. Hurd* argued the cause for appellants.

*Mr. Jay T. Ahern* argued the cause for respondent (*Mr. David W. Dowd,* attorney).

PER CURIAM. The New Jersey Turnpike Authority being desirous of acquiring certain property located on Broad Street, Elizabeth, in connection with a road-widening project, instituted condemnation proceedings by filing a complaint in the Superior Court, Law Division, on October 18, 1968, seeking appointment of condemnation commissioners to evaluate the property. At the same time it filed a declaration of taking of the property. Record title thereof was in Mitchell Tootle. Named defendants in the action were Tootle, Mary Tootle, his wife ("first name unknown"), their "heirs, devisees, personal representatives and successors in interest," the City of Elizabeth (joined because of unpaid taxes on the property), and the State of New Jersey, Department of Institutions and Agencies, operating the North Jersey Training School of Totowa (joined because the Department had recorded a lien against the property). An order to show cause why commissioners should not be appointed was issued by the court at the Authority's request. See *R.* 4:73-1, 3(b), (then 4:92-1, 3(b)); 4:67-2, 3 (then 4:85-2, 3). Although no affidavit of inquiry was filed showing that the whereabouts of the Tootles and their "heirs, devisees, personal representatives and successors in interest" were unknown, the order to show cause authorized service upon such defendants by newspaper publication at least 10 days before the return date thereof. See *R.* 4:4-5(c); 4:4-4(e). Following the publication no one appeared on behalf of the defendants on November 15, 1968, the return

day of the order to show cause, and the trial court ordered the appointment of three condemnation commissioners. The commissioners then fixed January 22, 1969 as the hearing date for determination of the value of the property.

On January 17, 1969, five days before the scheduled hearing date, Calvin Hurd, Esq. telephoned counsel for plaintiff advising him that Mitchell Tootle had died testate in Union County, that he, Hurd, had been appointed executor of the estate, and that he represented the estate as well as the surviving heirs. The hearing was then adjourned. Although plaintiff concedes that this telephone conversation was had, the attorneys do not agree as to the future course that was to be followed. Mr. Hurd said Authority counsel promised to notify him of the next hearing date; Authority counsel asserted that he requested Mr. Hurd to notify him in writing of his appearance, and that the matter was adjourned to await the letter. The hearing was rescheduled for May 7, 1968, and notice thereof was published once a week for two weeks in a local newspaper. No notice thereof was given to Mr. Hurd, the reason assigned by plaintiff's attorney being that he had not received the requested appearance letter.

On May 7 no one appeared for the defendants, and the hearing proceeded *ex parte*. On May 14 the commissioners filed a report assessing the value of the property at $2500.

Notice of this valuation was then published in the same local paper for four consecutive weeks, the last date being June 18, 1969. Mr. Hurd learned of the report on June 26 and, on communicating with plaintiff's attorney ascertained that notice of the hearing was not given to him because he had not sent a written appearance as requested. In spite of the apparent misunderstanding between the attorneys, and information indicating that in February 1968 the Elizabeth Development Agency had authorized an offer of $8900 for the land in question, plaintiff declined to vacate the commissioners' report and refused to give defendants another valuation hearing. A motion was then made in the

Law Division to set aside the report and to grant a rehearing. The motion was supported by a copy of Mitchell Tootle's last will leaving his estate to four of his five children and naming Mr. Hurd as executor, a certificate of the Union County Surrogate establishing the probate of the will and Hurd's appointment as executor, a copy of .the Elizabeth Development Agency's resolution relating to the $8900 offer for the property, and an affidavit of the attorney for the Agency stating that he had been in contact with "Ezra Tootle and others, as owners of the premises, and their attorney Calvin J. Hurd," and that a purchase offer had been made.

After argument of the motion the trial court allowed plaintiff's attorney to file a belated affidavit of inquiry (dated October 28, 1969) to support the publication of the original order to show cause which had been issued more than a year earlier. Without detailing the specific deficiencies, it is sufficient to say we find the affidavit to be untimely and woefully deficient, and the investigation set forth therein inadequate to provide a basis for service of the defendants by publication. The trial court held that the tardy filing of the affidavit of inquiry provided retroactive support for the service of defendants by publication, and that the facts recited in the affidavit established sufficient support for that form of substituted service. Further it declined to recognize any obligation on plaintiff's attorney to notify Mr. Hurd of the new date for hearing, even though the telephone call advising of his representation of the defendants was admitted.

The trial court also declared that defendants' attorney had failed to pursue an appeal from the condemnation commissioners' *ex parte* report within the time required by *R.* 4:73–6(a), (then 4:92–6(a)), and that he was tardy in filing the motion to vacate the report. Consequently, the motion to set aside was denied and defendants were adjudged bound by the $2500 valuation. The Appellate Division affirmed the holding in an unreported *per curiam*

opinion. The opinion conceded that "plaintiff's inquiry concerning possible parties in interest fell short of what should have been done," but said that defendants' attorney had not shown sufficient concern and diligence for his clients' interest by a timely filing of an appearance before the commissioners or by an appeal requesting a new evaluation.

■ We cannot agree. There is little doubt on the record presented to the trial court that a reasonably diligent investigation by the plaintiff would have provided sufficient information to facilitate personal service upon persons having a title interest in the property sought to be condemned. Such an investigation was not engaged in and in our view therefore the extraordinary method of service by publication was not available. See *Boddie v. Connecticut,* 401 *U. S.* 371, 377–379, 91 S. Ct. 780, 28 *L. Ed.* 2d 113, 118–120 (1971); *Walker v. Hutchinson,* 352 *U. S.* 112, 77 *S. Ct.* 200, 1 *L. Ed.* 2d 178 (1956); *Mullane v. Central Hanover Bank & Trust Co.,* 339 *U. S.* 306, 70 *S. Ct.* 652, 94 *L. Ed.* 865 (1950); Annotation, "Eminent Domain: permissible modes of service of notice of proceedings," 89 *A. L. R.* 2d 1404 (1963); Annotation, "Due process requirements as to notice in condemnation proceedings," 1 *L. Ed.* 2d 1635 (1956). In weighing the sufficiency of the attempted notice by publication which was engaged in here "on the basis of equivalence with actual notice, we are unable to regard [it] as more than a feint." Justice Jackson in *Mullane v. Central Hanover Bank & Trust Co., supra,* 339 *U. S.* at 315, 70 S. Ct. at 658, 94 *L. Ed.* at 874.

■ Furthermore, and of itself determinative of the issue presented here, when the Authority learned from Mr. Hurd that he represented parties actually holding an interest in the property, no further proceedings based upon the service by publication should have been taken. Instead the Authority should have ascertained from Mr. Hurd or from the Surrogate's records, or from both, the names and addresses of the interested heirs, and either served them properly or arranged for Mr. Hurd to accept service or enter an appear-

ance for them. Failure to do this invalidated the subsequent commissioners' report and the judgment entered thereon.

■ In addition to the illegality residing in the failure to effect proper service on the parties in interest, we add that since the Authority did have knowledge of defendants' attorney's interest in the proceedings, it was not unreasonable to expect that he would have been informed of the rescheduled hearing date for valuation of his client's property. We are disinclined to believe that plaintiff's attorney refrained from giving the notice simply because Mr. Hurd had failed to formalize by letter the telephoned information about his representation of the defendants. Even assuming that a request for written confirmation of the telephone conversation had been made and not complied with, ordinarily, considerate behavior of one attorney toward another might be expected to result in the vital notice. On the assumption, therefore, that the failure of notice was inadvertent, the resulting loss of defendants' right to participate in the proceeding involving an adjudication of their constitutional right to just compensation for their property should not have been visited upon them, absent such a serious breach of procedural requirements as to warrant a finding of waiver of or estoppel as to such right.

The record makes plain that there were procedural irregularities on both sides of the case, the more serious ones being chargeable to plaintiff. Under the circumstances, achievement of a just result on the basic issue, *i. e.*, fair compensation for the taking of defendants' property, ought not to be frustrated by binding defendants to the *ex parte* determination of the condemnation commissioners. Accordingly, the judgments below are reversed and the matter remanded for a valuation rehearing before the commissioners.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.